WILLIAM NEUBERT ET AL., APPELLANTS, VS. MASSMAN BROTHERS & CO. ET AL., APPELLEES.

1. An appeal in chancery opens the whole case for the consideration of the appellate court, and a cross-appeal is not essential to entitle an appellee to a reversal of a decree which contains errors prejudicial to his rights.

2. The law will not permit a debtor in failing circumstances to sell his land and convey it by deed without reservations, and yet secretly reserve to himself the equity of redemption for his own

use and benefit. Such a transfer lacks the element of good faith, and is fraudulent as to his creditors, although made for a valuable consideration.

3. A court of equity will not lend its aid to reach equitable assets of the debtor until the creditor has reduced his demand to a judgment, caused execution to issue thereon, and a return of *nulla bona* to be made on the execution by the proper officer.

4. A complainant who had no cause of action at the filing of his original bill can not maintain a supplemental bill on a cause of action that accrued thereafter.

5. Bill filed against two defendants after a joint demurrer overruled; one of the defendants was in default in answering, the other answered, and the case proceeded to final hearing; on appeal an objection is made for the first time in this court that a decree *pro confesso* was not entered against the party in default. *Held*, Not to be reversible error.

Appeal from the Circuit Court for Alachua county.

## STATEMENT.

Massman Brothers & Co. and Gomm & Leffler filed their bill in equity against William Neubert and Edward Weil for the purpose of subjecting a certain lot and tenements, which they alleged Weil had purchased and paid for, and caused to be fraudulently transferred to one Pauline Brown, and afterwards to Neubert, to the payment of certain judgments, which they alleged that they had recovered in the Circuit Court for Alachua county against Edward Weil and Solomon Stiller, as copartners in trade under the firm name of Weil & Stiller. The defendants demurred to the bill because Solomon Stiller was not a party thereto, and no executions were issued on said judgments. The complainants then amended their bill by alleging that execution had been issued on the judgment in favor of Massman Brothers & Co., and return of *nulla bona* made

thereon by the proper officer before the filing of the original bill, and obtained leave of the court to file a supplemental bill. The court then overruled the first ground of this demurrer. Afterwards complainants filed their supplemental bill, and stated therein, among other things, that since the filing of the original bill execution had been issued upon the judgment in favor of Gomm & Leffler, and return of *nulla bona* made thereon by the proper officer. The defendants demurred to this supplemental bill because it appeared therefrom that Gomm & Leffler had not caused execution to be issued on their judgment prior to the filing of the original bill; but the court overruled this demurrer also. Neubert then filed his separate answer to the bill, and therein alleged that he was a *bona fide* purchaser for a valuable consideration, but Weil made no answer at all. A general replication was filed to this answer, and testimony was taken before a special master and reported to the court. A final hearing was then had, and the court decreed that upon the payment to Neubert of $441.30, with interest thereon from the first of December, 1877, the lot and improvements be held subject to the judgments of the plaintiffs and be sold by a commissioner named in the decree, and the proceeds arising therefrom be applied *pro rata* on said judgments, etc., and the defendants appealed therefrom.

*Hampton & Ammons*, for Appellants.

*E. C. F. Sanchez* and *Thomas F. King*, for Appellees.

(Judge Malone, of the Second Judicial Circuit, sat in the place of Mr. Justice Taylor, who was disqualified).

MALONE, Circuit Judge:

Both the appellants and appellees are dissatisfied with this decree, and ask its reversal. But the appellants contend that the appellees can not be heard in opposition to it because they have not taken a cross-appeal. This contention is contrary to the rule which has been established by the decisions of this court. It has been uniformly and repeatedly decided by this court that an appeal in chancery opens the whole case for the consideration of the appellate court, and that a cross-appeal is unnecessary to entitle an appellee to a reversal of a decree which contains errors prejudicial to his rights. O'Neal vs. Percival, 25 Fla. 118, 5 South. Rep. 809; Foster vs. Ambler, 24 Fla. 519, 5 South. Rep. 263; Fairchild vs. Knight, 18 Fla. 770; Southern Life Insurance & Trust Co. vs. Cole, 4 Fla. 359.

We will now consider the assignment of errors. It is stated in the petition of appeal that the decree is contrary to the facts and pleadings, and it is not supported by the weight of the testimony or pleadings, and on that account is erroneous. This assignment includes the first, second and third assignments of error in the amended petition of appeal, and we will consider them together. It appears from the evidence that Weil & Stiller were engaged in a mercantile business in Gainesville and failed. While in failing circumstances they made a bill of sale to Neubert of all of their property, comprising a stock of goods, in part payment of their indebtedness to him. The bill of sale is dated January 29th, 1877, and purports to have been given for a consideration of $1,260. Neubert then moved a part of these goods to his own house and

packed them in boxes, but left a part, amounting in value to $500 or $600, remaining in the store-house of Weil & Stiller.   These were soon afterwards sold by Weil to Tobias Brown, who took possession of this store-house as soon as Weil & Stiller vacated it.   Neubert never questioned this sale or made any inquiry about these goods.   A few days after this transaction Neubert endorsed a promissory note for $441.30, payable the following December, which Weil made and delivered to one Jacob Cohen.   The lot in controversy was purchased from J. H. Roper by Weil at the price of $500 and paid for by him, but the exact date of the purchase is not shown; however, at that time, Weil & Stiller were indebted to the plaintiff and in failing circumstances.   The lot was unimproved, and encumbered with a decree of foreclosure in favor of Edward Haile against J. H. Roper, and it was necessary to have it sold under this decree in order that Weil might become the purchaser at such sale, and thereby acquire a title to it free from all incumbrances.   Accordingly it was duly advertised and sold under the decree by the sheriff of Alachua county on the second day of July, 1877, and was purchased by Weil, at the nominal price of $100, in pursuance of his previous agreement with Roper.   He did not take the title in his own name, but had it put in the name of Pauline Brown, and afterwards in the name of Neubert.   A short time after these transactions Weil contracted with W. F. Flynn to construct a dwelling-house for him on this lot, and Flynn began the construction of it.   Both Weil and Neubert furnished money and material for its construction, and when it was almost completed Weil conveyed his interest in it to Neubert by a deed dated December 19th, 1878, for a consideration of $450

expressed therein. Neubert procured from Pauline Brown another deed dated December 18th, 1877, in which it was recited that the consideration stated in her former deed was wrong. The *bona 'fides* of these several conveyances are the real matters in controversy.

Ordinarily the purchaser of real property takes the title to it in his own name, and when he puts it in the name of another, he does so for some purpose. The purpose of Weil in putting the title to this lot in the name of Pauline Brown, instead of taking it in his own name, is now the subject of inquiry, and we are not left to inference or conjecture to ascertain it. The testimony shows that his purpose was to conceal it from his creditors and prevent them from subjecting it to the payment of his debts. It also shows that Pauline Brown had knowledge of his purpose and participated in it. The conveyance to her was without consideration, and lacking in the element of good faith, and on that account ineffectual to shield the lot from the claims of Weil's creditors.

The purpose and character of her conveyance to Neubert is the next subject of enquiry. It purports to be an absolute sale and conveyance of the lot from her to him for a consideration of $441.30. No one else appears to have been connected with it. But the evidence shows a different transaction altogether. It shows that she neither sold this lot to him, nor did he purchase it from her. He never even negotiated with her for the purchase of it, but conducted whatever negotiations were had in relation to it directly with Weil, without her knowledge. He knew that she never claimed any beneficial estate in the lot, and never received any consideration for it, but that Weil

was the real owner, and had the title put in her name for his use and benefit. Indeed, he knew all of the circumstances attending Weil's purchase of it and the real status of the title at the time she conveyed it to him. A knowledge of these facts was sufficient to put any honest man using ordinary caution upon inquiry. And if he did not have actual notice of Weil's fraudulent intentions, he had knowledge of such facts as would have led to their discovery if he had made further inquiry. · Under these circumstances we do not think Neubert a *bona fide* purchaser.

This transaction presents another aspect which makes it unimportant whether, as a matter of fact, the defendants had a purpose to defraud the creditors of Weil. These deeds are absolute upon their face and purport to convey an indefeasable estate in fee simple, and contain no reservations whatever. But it was not intended that they should have this effect. They were made for the purpose of securing Neubert for endorsing a promissory note for $441.30, which Weil made and delivered to Jacob Cohen, and it was agreed between Neubert and Weil that Weil should retain the equity of redemption. While the deeds appeared to be absolute on their face, there was a concealed agreement between these parties inconsistent with their terms which secured a benefit to Weil at the expense of those who he owed, of which Neubert had knowledge. A trust thus secretly created is a fraud upon creditors, whether created with a fraudulent intention or not, because it deprives them of a valuable right, and secures to their debtor the beneficial enjoyment of it. Fraud in such cases is an inference of law and is as equally effective to avoid the

transaction as to creditors as if the fraudulent intention was directly proved. The law will not permit a debtor in failing circumstances to sell his land and convey it by a deed without reservations, and yet secretly reserve to himself the equity of redemption for his own benefit. Such a transfer lacks the elements of good faith and is fraudulent as to his creditors, although made for a valuable consideration. Luskins vs. Aird, 6 Wall. 78; Campbell vs. Davis, 85 Ala. 56, 4 South. Rep. 140.

Overruling the demurrer to the bill is also assigned as error. The object of the bill was to reach and subject to the payment of certain judgments real estate which the judgment debtor had bought and paid for, and had the title thereto taken in the name of another, and the aid of a court of equity was sought for that purpose. But before a court of equity will extend its aid in such cases the judgment creditor must have exhausted his remedies at law, by suing out execution and having a return of *nulla bona* made thereon by the proper officer. Then, and not before, he may successfully invoke the aid of equity to reach equitable assets. Robinson vs. Springfield Company, 21 Fla. 203; Richardson vs. Gilbert, 21 Fla. 544; Freeman on Executions, sec. 428. The plaintiffs, Gomm & Leffler, had not sued out execution on their judgment and caused a return of *nulla bona* to be made thereon at the time of filing the original bill, therefore they were not entitled to any relief in a court of equity, and the demurrer should have been sustained as to them.

The filing of the supplemental bill showing that since the filing of the original bill they had sued out execution and caused a return of *nulla bona* to be made thereon, can not give them a standing in court

which they did not have at the commencement of the suit. A supplemental bill can not cure a defect of this character. Ledwith vs. City of Jacksonville, 32 Fla. 1, 13 South. Rep. 454; Beach's Modern Equity Practice, sec. 496.

The granting of the final decree in the absence of a decree *pro confesso* against Edward Weil is also assigned as error. The record shows that the defendant Weil was duly served with subpœna and joined in the demurrers to the original and supplemental bills; and after the overruling of these demurrers, defaulted in answering the bill on the next succeeding rule day. Objection that no decree *pro confesso* against Weil, is made for the first time in this court. Under these circumstances the omission to enter a decree pro confesso against Weil prior to granting a final decree was not reversible error.

The want of proper and legal proof of the rendition of the judgment in favor of Massman Brothers & Co. against Weil & Stiller is also assigned as error. The record shows that the defendants' solicitors admitted in writing, which was filed before the master as evidence without objection, that judgments were rendered in favor of complainants, as stated in the bill, and that executions were issued thereon as stated in the amended and supplemental bills, and that returns of no property could be found, were made on said executions. This admission was made to serve some legal purpose, for it would be unjust to defendants' counsel to impute an illegal or fraudulent one. Evidently it was not intended to leave the plaintiffs in the same status in relation to the proof of their judgments, in which they were, before it was made, otherwise it would have been without meaning or effect. When

100 SUPREME COURT.

Neubert, et al. v. Massman Brothers & Co. et al.—Opinion of Court.

facts are admitted by the parties to a suit, it is generally done for the purpose of relieving one or the other of them from the burden and expense of proving such facts. And it is fair to presume that the defendants made this admission for the purpose of relieving the plaintiffs from the burden and expense of proving their judgments. Indeed, the admission could serve no other legal purpose. We think, therefore, that it was sufficient proof of the judgment of Massman Brothers & Co. against Weil & Stiller.

We deem it unnecessary to notice the seventh assignment of error further than to state that it incorrectly states the prayer of the bill, and that we deem the prayer of the bill sufficiently comprehensive to embrace the relief granted by the Circuit Court.

Decreeing a sale of the property by a commissioner is also assigned as error. The legal title to the property in controversy was never in the judgment debtor, and for that reason was not liable to an execution at law; it could be reached in equity only, and a court of equity was the proper tribunal to decree its sale and direct the proceeds arising therefrom to be applied to the payment of the judgments; and the power to make this decree necessarily implied the power to execute it. We think this assignment untenable.

Appellants' counsel have contended with much zeal that Neubert ought to be reimbursed for the money which he has expended in putting valuable improvements on this lot, but have failed to show any equity in their contention. At the time these improvements were being made he knew the status of the property and took the hazards of the venture. He thrust himself in the contest between these creditors and their debtor, espoused the cause of the latter, and gave him

his aid to defeat them in an honest effort to collect their just demands. And even after the debtor had given up the contest, he continued it up to the present time. He does not come into court with clean hands, and his claim is devoid of merit. To reimburse him for the money which he has expended in improvements, and subordinate the claims of these creditors of his, under such circumstances, would be holding out a premium for fraud, and closing the doors of the court in the face of the diligent creditor. It is the policy of the law to put its mark of condemnation upon fraud in every distinguishable form, and we will not depart from it in this instance. We regard the rights of these plaintiffs as superior to Neubert's claims for improvements made on the lot, and his endorsement of Weil's promissory note to Cohen, and think the property should be applied in payment of their debts.

The decree adjudging that upon the payment by Neubert of $441.30, with interest from December 1st, 1877, the lot and improvements be held subject to the payment of the judgments in this suit is reversed; and the overruling of the demurrer to the original and supplemental bills as to Gomm & Leffler is reversed also; so much of the decree as subjects said lot and improvements to the judgment of Massman Brothers & Co. is affirmed, with directions that the court below enter a decree in favor of Massman Brothers & Co.; and that the bill be dismissed as to Gomm & Leffler.